Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence after the record was closed by the Full Commission or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies that part of the Opinion and Award of the Deputy Commissioner that defendant assigned as error and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all times herein.
3. On 20 November 1997, defendant-employer was insured for workers compensation by Constitution State Service Company.
4. Plaintiffs last day of employment with defendant-employer was 20 November 1997.
5. Plaintiff returned to work on 3 April 1998 for another employer making an average weekly wage of $231.75.
6. Plaintiffs average weekly wage at all times relevant herein was $353.84 per week, with a compensation rate of $235.89 per week.
7. Stipulated Exhibit No. 1 is a summary of short term disability benefits paid by defendant-employer for which defendants are entitled to a credit against weekly compensation benefits recoverable.
8. Stipulated Exhibit No. 2 sets forth the stipulated average weekly wage and compensation rate.
9. Plaintiffs Exhibit No. 1 contains plaintiffs pertinent medical records and may be received in evidence without objection.
 ***********
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 42 years old.
2. Plaintiff developed asthma during his childhood. Beginning in 1978, the symptoms of his condition were kept under control through the use of Isuprel or Primatene through 1995. At that time, plaintiff began working as a supervisor in the shaker house and as a chipdozer operator for defendant-employer, a woodchip exporter.
3. The shaker house at defendant-employers workplace is a steel building where rail cars are brought for unloading of wood chips. A large vibrator is set on top of a rail car and shakes the car to facilitate the unloading of the wood chips.
4. The chip dozer is a piece of equipment used to move the wood chips into piles and for loading the chips onto ships.
5. In Spring 1996, plaintiff began to notice shortness of breath when working around the wood chips. On 19 May 1996, plaintiff presented to the Carteret General Hospital Emergency Room complaining of headache, shortness of breath, wheezing and coughing up greenish-yellow sputum. Plaintiff was referred to Dr. Charles Goodno.
6. Plaintiff presented to Dr. Goodno on 22 May 1996. Dr. Goodno recommended frequent use of a saline nasal spray and a daily steam shower. In addition, Dr. Goodno advised plaintiff to wear a hepafilter mask at all times while exposed to wood chip aerosols, and to begin monitoring his breathing with a q.i.d. peak flow, maintaining the results in a diary.
7. By 24 June 1996. plaintiffs condition had improved. Plaintiff advised Dr. Goodno that he had returned to the shaker house the previous week due to a shortage of staff on the job.
8. Following an examination on 8 July 1996, Dr. Goodno diagnosed plaintiff with asthma with probable occupational exacerbation. Despite treatment, plaintiffs condition remained suboptimal. Dr. Goodno wrote plaintiff out of work for a period of two weeks. When plaintiff returned to Dr. Goodno on 23 July 1996, his condition remained the same. Dr. Goodno opined that there was not a significant occupational component to plaintiffs asthma. Plaintiff was permitted to return to work the following day.
9. Plaintiff returned to Dr. Goodno on 6 August 1996. He had been doing generally well since going back to work, but experienced an asthma attack on 5 August 1996. While Dr. Goodno noted an asthma exacerbation, he specifically stated that there were "no signs of work-relatedness. In addition, Dr. Goodno did not "see any contraindication to his going back to work at regular duty tomorrow. Dr. Goodno released plaintiff from workers compensation follow-up, and scheduled further appointments as a private patient for asthma care.
10. Plaintiff experienced a single episode of coughing and wheezing on 20 August 1996 when he worked in the shaker house pit without wearing his respirator. Plaintiff reported that shortly after he entered the pit a cloud of dust appeared and he began coughing. Plaintiff reported to Dr. Goodno the next day and the reexamination showed his lungs were clear.
11. On 11 September 1996, plaintiff presented to Dr. Goodno for a follow-up examination. Plaintiff reported that he was experiencing no symptoms at work and that his peak flow was consistent both at home and at work. Dr. Goodno released plaintiff from workers compensation follow-up.
12. On 24 September 1997, plaintiff presented to pulmonary internist Dr. Roy N. Everett with complaints of tightness in his chest, shortness of breath and inability to breathe. Plaintiff reported that he was still working in the shaker house at defendants workplace, and that he was exposed to dust, woodchips, steam, and other respiratory irritants. Dr. Everett diagnosed plaintiff as having asthma complicated by his work environment.
13. Dr. Everett placed plaintiff on medication and reexamined him on 23 October 1997, at which time plaintiff showed no improvement. Dr. Everett maintained that plaintiffs work environment was aggravating his asthma and was unsuitable for someone in plaintiffs condition.
14. Plaintiff ceased working for defendant-employer on 20 November 1997. Plaintiff remained out of work until 3 April 1998 when he became employed as a manager of a pawn shop.
15. Dr. Everett testified that while plaintiff would always have asthma, once removed from the conditions of the unsuitable work environment, his condition had eventually stabilized and returned to the level it had been prior to his exposure to the work environment with defendant-employer. Plaintiffs diminished wages after 2 April 1998 were not the result of any disability relating to his occupational disease.
16. Plaintiffs job with defendant-employer significantly aggravated his pre-existing condition of asthma and rendered him totally disabled from 21 November 1997 through 2 April 1998. By 2 April 1998, plaintiffs condition returned to its pre-employment level. Plaintiffs job with defendant-employer and the resultant exposure to dust and respiratory irritants placed him at a greater risk of having his condition aggravated than that of the general public not so exposed.
17. Plaintiffs need for continuing medical treatment for his asthma is related to his condition as it has existed his entire life, and is not the result of the temporary aggravation of the condition caused by his employment with defendant-employer.
18. Plaintiffs average weekly wage at all times relevant herein was $353.84 per week, with a compensation rate of $235.89 per week. Defendant-employer provided plaintiff with some short-term disability payments during the period of his disability. Defendants are entitled to a credit for the benefits paid to plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiffs exposure to large amounts of dust, wood chip aerosols, steam and other respiratory irritants during his employment with defendant-employer significantly aggravated plaintiffs pre-existing condition of asthma. Plaintiffs employment with defendant-employer placed him at an increased risk over that of the general public of aggravating his pre-existing condition of asthma. Accordingly, plaintiffs disability is compensable. Robinson v. J.P. Stevens Co., 57 N.C. App. 619,292 S.E.2d 144 (1982).
2. Plaintiffs asthma, aggravated by his employment with defendant-employer, constitutes an occupational disease within the meaning of N.C. Gen. Stat. 97-53(13).
3. As a result of the aggravation of plaintiffs pre-existing condition, plaintiff was rendered totally disabled from 21 November 1997 through 2 April 1998, when his condition returned to its pre-employment level. Plaintiff is eligible for compensation in the weekly amount of $235.89 for that period. N.C. Gen. Stat. 97-53(13).
4. Defendants are entitled to a credit for short term disability payments made to plaintiff during the time of his disability. N.C. Gen. Stat. 97-42.
5. Plaintiff is entitled to have defendants pay for medical care related to his asthma from 19 May 1996 through 2 April 1998 when his condition returned to its pre-employment level. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for temporary total disability in the weekly amount of $235.89 for the period from 21 November 1997 through 2 April 1998. Said compensation shall be paid in a lump sum subject to the credits and attorneys fees provided below.
2. Defendants shall pay for plaintiffs medical treatment for his asthma from 19 May 1996 through 2 April 1998.
3. Defendants shall receive a credit against the compensation awarded to plaintiff in the amount of $3,952.80 for short-term disability payments paid to plaintiff under an employer funded disability plan.
4. Counsel for plaintiff is entitled to a reasonable attorneys fee of 25% of the compensation awarded to plaintiff under Paragraph 1 of this award. Said fee shall be paid directly to plaintiffs counsel.
5. Defendants shall pay the costs of this action.
This the ___ day of January, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER